Case number 14-7104, Bode & Grenier, LLP v. Carroll L. Knight et al. Appellant. Mr. Hearn for the appellant, Mr. Ogg for the appellee. Good morning. Good morning. May it please the Court, Joseph A. Hearn appearing on behalf of all the appellants in this case. And we know the Court has read our brief, and today I'd like to highlight only a couple of sections of our brief. And of course, answer any questions the Court may have. But first, I want to bring this Court's attention to the Michigan Supreme Court case that was decided in June of this year, June 3rd of 2015. That's the Frazier-Tribblecock-Davis & Dunlap v. Boyce Trust case. And we submitted a letter to this Court pursuant to FR AP 28J last week. We believe the Frazier case is dispositive of the largest issue in this case, at least the largest money issue. And that is whether a law firm can recover additional attorney's fees for representing itself when it sues a former client. There's several steps we would have to take before we would get to Frazier, though, isn't that correct? Yeah, you'd have to take one step. You get there in two ways. One is you can apply Michigan law, and I'm sure we'll talk about that in a second. Or two, you're not bound like Magistrate Robinson was by the Baker v. Hotstedler case. She was bound because that was a Second Circuit case from 2006. There was a dissent in that case, as the Court may be aware, from Judge Henderson, who basically held that the reasoning in Baker v. Hotstedler was not sound in her mind, and she dissented from the case. So you can either get a true Michigan law or a true D.C. law. In any event, the Michigan case, the Frazier case, says an attorney, whether it's a law firm or an individual, cannot recover additional attorney's fees charged for representing itself in any litigation matter. And I think the two cases are virtually identical. Both plaintiffs are law firms. Both law firms sue their former clients. And both law firms, I think this is a critical element, chose to represent themselves. We're not arguing today about the attorney fee provision in the retention letter. If there are outside fees to an outside counsel, like Mr. Ogg in this case, those would be appropriate. We are arguing, though, that internally generated fees are not appropriate fees, either whether it's under a fee-shifting statute or under a contract. And the Michigan law was pretty clear. To have attorney's fees, you have to have an attorney-client relationship. And to have that, you basically need an attorney and a client, basically in an agency relationship. And when you represent yourself, that agency relationship just cannot exist. So there is a conflict between Michigan and D.C. law in this? There is a current conflict between Michigan and D.C. law, yes. So you'd have to prevail under our choice of law rules in showing that Michigan law applies in order for us to take on this? Correct. Would you like to talk about that? I can talk about that right now. Sure. Essentially, we believe that Michigan law should apply because the two contracts, there's only two contracts or two documents in this case, the retention letter and the promissory note. The promissory note has a specific choice of law provision, and the retention letter specifically addresses or references the promissory note. And we think if you read these two documents together, Michigan law should apply. But the choice of law provision didn't have to do with this issue in the letter. I'm sorry? The choice of law provision, you'd have to persuade us that the choice of law issue, the choice of law provision in the letter actually governs the dispute before us now. Right. Well, the choice of law provisions in the promissory note, it's actually stated in the promissory note. And the retention letter references the promissory note. And I think what's critical here is both documents were created pursuant to the same transaction. It was drafted by the Bodie law firm in 2007, August 7th of 2007. It was sent to my client. There's two two-page documents. It's all about attorney's fees. The promissory note's about past attorney fees, and the retention letter's about future attorney fees. One thing I think is critical, the attorney's fees are all from the Ohio litigation in Lucas County. That's where Toledo is. And it all emanated from one single gasoline spill. So it's all about the same deal. It's all about the same transaction. And we think if you look at those two documents, you'll see that a Michigan choice of law provision should apply. Can I ask you this? Suppose, just for argument's purposes, that we disagree with you on your argument that the choice of law provision in the promissory note governs. Correct. Then do you still have an argument in your view that choice of law principles, as applied by our court, would still favor Michigan law over D.C. law? Or are you resting on the choice of law provision? The choice of law provision, and also alternatively, again, this panel is not bound by the circuit in the Baker and Hostetler case. It certainly has to be very persuasive. But this panel could reach a different conclusion and follow the reasoning of Justice Henderson and also the Michigan Supreme Court that says all the circuits that have adopted the footnote 7 in the Kay versus Eller case, that basically distinguish pro se litigants, Joe Ahearn as opposed to Joe Ahearn, D.C., isn't the proper reasoning. It was NICTA in Kay versus Eller. And this circuit chose to follow it, and some other circuits have. But this panel right here is not bound by that. All right. The other issue I'd like to talk briefly about is the res judicata claim preclusion. We're appealing Judge Roberts' September 20, 2011, opinion order. And in a nutshell, what Judge Roberts said is the confession of judgment that was entered in Michigan on May 2, 2008, did not have res judicata effect. Basically, Judge Roberts distinguished confessions of judgment from other types of judgment. As the Court may be aware from our brief and also discussion by Judge Roberts, this issue has not been reached in Michigan. Michigan law is the proper law to decide this issue for the full faith and credit provision in the Constitution. And essentially, all judgments in Michigan, and we cited consent judgments, summary judgments. In Michigan, we call those summary dispositions, same thing. And pro confesso judgments are all given res judicata effect. There's really no difference for a confession of judgment. The judgment itself acts the same. So the mere filing is the judgment? You have to file a confession of judgment, and then they issue a judgment that day. So it is a streamlined procedure. But you end up, on May 2, they filed the confession of judgment, and on May 2, it was entered, which is obviously much faster than most normal situations. But I think what's critical in this case is on May 2, the second claim was already right. Bodie and Grenier had not represented my clients since December of 2007. That's four and a half months. So for four and a half months, there had been no legal services rendered. And we thought, well, we think that they should have joined or were required to join both the $75,000 new fees, let's call them, to the collection of the $300,000 old fees. And again, we don't think there's any distinction. We couldn't find any cases that held contrary, that confessions of judgment should be separated and treated differently than other types of judgments for res judicata effect. Finally, just briefly, oh, I'm sorry. Go ahead. Just our other issue on appeal is the litigation committee. As the court is aware, the lower court precluded any discussion of the litigation committee, which is referenced in the retention letter. Essentially, in two opinions, the November 5, 2012 written opinion and the November 13, 2012 oral opinion on the bench, where the court granted the motion to eliminate, to strike any reference to the litigation committee. The court basically looked at Rule 15A2 and basically said, lead is freely granted to amend pleadings. However, if there's undue delay or prejudice, this will not be granted, will not be freely given. And the court found significant that they thought that Bodie and Grenier was not given notice of the litigation committee as a defense. Our brief indicated that this discussion was taking place in a deposition three years prior. It's a critical element of the case. It was always a keystone defense of our case. And I think what's evident by that is when we finally got the motion eliminated, decided against us, when we finally could not talk about the litigation committee anymore, we basically had a throw in the towel. This is not a case where there's four or five defenses. This is one that was just snuck in or kind of riding on the side. We only had two defenses, substantive defenses, throughout this case. One was the litigation committee and one was the reasonable attorney fees. And by the time trial came on November 13th, the only defense we had was the litigation committee. But if the litigation committee was a significant defense to you, it seems strange that it wouldn't have been mentioned earlier. Well, it wasn't mentioned in the pleadings. The words litigation committee were not mentioned in the pleadings. We did say the complaint failed to state a cause of action. Well, I was focusing more on the fact that you several times agreed that the services were provided pursuant to the contract, which suggests that you were not challenging that. Yes, you're talking about paragraph 33 of the amended complaint where it says services were provided pursuant to the agreement. That's what the amended complaint says. Paragraph 12 of the complaint defines agreement as all the discussions between the parties over a 13-year period. How could we not answer that? Yeah, of course services were provided over the 13-year period. We paid them a lot of money. They were our lawyers for a long period of time. We were presumably satisfied for a long period of time. But that doesn't mean we conceded and said, hey, for this $75,000, we owe you the money. And that's one thing I think the court relied on below, that she was under, I think, a misapprehension that the agreement was the retention letter. And again, we didn't define those terms. Appellee defined those terms in its amended complaint. Okay, I just want to be clear about a couple of things here. I'm just looking at your brief. And the Kaye v. Eller case, it's referenced in your citations, but it isn't referenced in your argument. And you have a footnote to Baker v. Hostetler, but that footnote is to a D.C. Circuit opinion by which this panel clearly is bound. Your Honor, I thought in our brief we did have Kaye v. Eller listed in there. It's listed. And it says page 35. And if you go to page 35, you'll see that that's an error. And so I was trying to find it in your brief. I apologize for that, Your Honor. And I see it now on page 31. And you're talking about an attorney representing himself cannot recover attorney's fees. But then you acknowledge on the next page in footnote one that this circuit has drawn a distinction that's different than in Michigan. And that's not a Second Circuit case. That's a case from this circuit. I guess I'm not following you. Is that on page 33, the footnote? 32. Footnote one. I'm sorry. I'm at the wrong. Well, Your Honor, if that is the case. Oh, the footnote of 32. Yeah, we're drawing a distinction from the Baker and Hostetler case and saying that, yes, that is a D.C. Circuit opinion. That is a circuit court that made that. That was absolutely binding on Magistrate, let me see, Robinson. And it's binding on this three-judge panel. Yes, Your Honor, it is. But, again, we thought the court could consider the dissent in that or take new reasoning on that and relook at the issue. If not, then we are bound by the Michigan law issue. All right. Thank you. Your Honor, I have three minutes left for rebuttal. Of course. Good morning, Your Honors. Randall Logg on behalf of Bodie and Grenier. It does appear now that the Knight defendants are asking this court to overrule the Baker and Hostetler case. And we respectfully submit that this court cannot and should not do that. They didn't argue that below. I didn't think they really argued that in their briefs. And they've not provided you with any policy reasons why that decision should be overruled. And I would note that with respect to that issue, the Baker and Hostetler holding is the uniform holding of the circuits that have addressed that issue. No circuit has held contrary to Baker and Hostetler. At the time of Baker and Hostetler, there were decisions from the Fifth Circuit and the Fourth Circuit. And since that time, the Eighth Circuit has recently joined and followed Baker and Hostetler, citing the sound policy grounds with respect to that. That's a more recent decision. It's not cited in the brief. But in any event. I guess Michigan disagrees. Yes. Michigan disagrees, Your Honor. Michigan Supreme Court disagrees on the narrow statutory issue. They were in the Michigan case that was cited, they were interpreting a sanctioned statute under Michigan law. And it was an interpretation of the language of the statute. It was not addressing the broader question, which we have here in this instance, whether or not, say, in a contract case, there can be attorney's fees under the language of the contract. So you think that if the choice of law provision requiring application of Michigan law governed in this dispute, and I take the point that you don't agree with that. I can address that issue. If you did, then you would say even if Michigan law applies, what the Michigan Supreme Court said doesn't even matter. It doesn't matter. It doesn't matter because it's clear from that opinion that they were addressing the statutory language of the Ohio sanctions rule. And they were saying that under the wording of that statute, there has to be actual fees incurred. And they were giving it a very narrow interpretation. So even under that case, that would not be binding on this court. But you don't think they were applying Michigan law? They were applying Michigan, the Michigan statute with respect to that issue. Well, I think it's something about Ohio. I'm sorry. I'm sorry. They were applying Michigan law. I apologize. They were applying Michigan law with respect to the interpretation of that particular statutory language. And when you read the case, it is clear that that's what they were doing. They were saying based upon the language of this particular sanction statute, can we award fees to the prevailing party? And the answer is based on the language of the statute, no. So your position would be if the attorney's fees issue were controlled by contract, we wouldn't necessarily know what the Michigan law would provide? Below, we'd argued that even under Michigan law, that it would be compensable in the private context. And we did that below for two reasons, based upon some Michigan cases. But also under the Michigan choice of law, Michigan choice of law under the circumstances, if you applied their choice of law issues, they would have referred that back and applied D.C. law under the factual circumstances. Where the case was being litigated here, it involved cases of D.C. attorneys. And which jurisdiction under the circumstances would have had the superior or more compelling governmental interest in regulating the fees of the attorneys before it? But that's a different question. I thought what Judge Brown was asking you was suppose Michigan law applies. I take your point now to be that if you apply Michigan choice of law provisions, then Michigan choice of law provisions would point us to D.C. law, and then D.C. law would apply. Correct. But I think the premise of the question was suppose D.C. law doesn't apply and suppose Michigan law applies. Would you say that the Michigan Supreme Court decision doesn't govern on the theory that this is an issue of contract? Correct. I was trying to make both points. Okay. That even if you applied Michigan law directly, because it's a matter of contract law and the language of the contract, because Judge Brown, that's a very important issue because if you go back and you look at Judge Robinson's careful and thoughtful decision on the choice of law provisions, she carefully went through that and she looked specifically at the contract provision and the record in terms of what the actual language was in the contract. And the affidavit submitted in support of our position that it meant that private law firms would get their own fees. And at her opinion, and it starts at page 847 and goes to 848 in the appendix, she goes through the choice of law issues. And in her memorandum opinion, she talks about the distinction between statutory issues and the contract issues. And she concludes that where a court is faced with the question of contract interpretation, not statutory interpretation, the central question is not what Congress intended, but what the parties intended, citing a D.C. case, Wilcox v. Sisson. And then she goes on, you know, after she'd analyzed the record on this issue, this is a factual finding, this is the trial court in which there's no evidence of any abuse of discretion or clearly erroneous findings with respect to the party's intent. She concludes defendants point to no language in the party's contract which suggests the party's intended to preclude fees incurred by Bodie and Grenvig while representing in itself, nor has the court located any language. So what we have here on this critical issue of the party's intent is the trial court specifically addressing the issue in the context of the record, the factual record below, and then making a factual finding which is not clearly erroneous in any sense. And nor has there been any argument to this court that that finding is clearly erroneous. With respect to the issue that the litigation committee has, quote, always been a keystone defense, end quote, as Judge Brown has pointed out, the answers to this court, to the complaint has always been a, until the very end, been admitted that the services at issue here, the $75,000 in services, not the earlier services because that's not what was being litigated. The services at issue were performed, quote, pursuant to agreement, end quote. The complaint makes absolutely clear that the agreement at issue here was the one that was being sued on. It's referenced in the complaint. So at no point in time could there have been any reasonable confusion with respect to that issue. That was their original admission. There's a reference to the deposition. Apparently in the deposition, not apparently, in the deposition, Mr. Bode was asked questions about the litigation committee. He affirmed in the deposition that the services were performed pursuant to the litigation committee approval. And that deposition was taken in 2009. 2012, there's an amended complaint and an amended answer. And in that amended answer, three years after the deposition, once again, they expressly acknowledge that these services at issue were performed pursuant to the litigation committee. Now this is an issue with respect to whether or not that admission should be withdrawn. Because they would have to, on the eve of trial, they were actually coming in and saying, Your Honor, we want to take back that admission. And so this was an issue with respect to the trial judge's discretion to make an assessment as to whether or not they should be allowed to withdraw that clear admission and assert a new affirmative defense just weeks before trial, long after discovery was closed. The case law makes clear that that is a matter within the sound discretion of the trial judge. The trial judge, in a very carefully thought out opinion, went through the issues and made the factual findings and that that was not an abuse of discretion. With respect to the other issues, we'll rest on our brief, Your Honor. All right, thank you. Thank you, Your Honor. Yes. First of all, on the issue of whether the Frazier case, it's just limited to what we call mediation sanctions in Michigan. If the case mediates and goes forward, there are some attorney's fee sanctions in there, also called case evaluation sanctions. There is a discussion in citing the Omdahl case, the Frazier case, we also cite that in our brief, in Michigan about what is an attorney and the requirement for an agency relationship. So there is a discussion in that case about, you know, how can you get an attorney fee? You do need this attorney-client relationship and apparently we may hold different than a lot of the other circuits in other states. Secondly, Your Honor, on the question of this acknowledgement or agreement that in our answer we agreed to, we agreed that the services were provided. I just want to read the complaint, number 12. They talk about during Bodie and Grineer's 13-year representation of the defendants, Bodie and Grineer, and defendants had an explicit verbal agreement regarding Bodie and Grineer's legal representation of the defendants of the agreement. So when in 33 they say we provided services under the agreement, we certainly can acknowledge that because, again, we paid them a lot of money over a long period of time. Again, that doesn't mean that, oh yeah, by the way, everything you billed us is due in Owing. Thank you. Thank you. We'll take the case under advisement.
judges: Rogers, Brown, Srinivasan